UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


CHRISTOPHER TIMMONS,

       Petitioner,

v.                                     Case No. 3:14-cv-767-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS, et al.,

       Respondents.
_____

## ORDER

## I. Status

       Petitioner Christopher Timmons, an inmate of the Florida penal system, initiated

this action on June 24, 2014, by filing through counsel, a Petition Under 28 U.S.C. § 2254

for Writ of Habeas Corpus by a Person in State Custody (Petition; Doc. 1). In the Petition,

Timmons challenges a 2003 state court (Duval County, Florida) judgment of conviction

for first degree murder. On May 6, 2016, Respondent Secretary for the Florida

Department of Corrections submitted a response in opposition to the Petition. See

Respondent's Answer in Response to Order to Show Cause and Petition for Writ of

Habeas Corpus (Response; Doc. 9) with exhibits (Resp. Ex.). Timmons filed a reply and

an amended reply on December 27, 2016. See Petitioner's Amended Reply to State's

Response to Petition for Writ of Habeas Corpus (Amended Reply; Doc. 16).[1]  This case

is ripe for review.

_____
[1] Timmons filed his original reply to the Petition (Doc. 15) on December 27, 2016. However, he filed an
amended reply because he inadvertently failed to include Exhibit A with his original reply.

## II. Procedural History

On December 5, 2002, a grand jury returned an indictment charging Timmons with the first degree murder of Raul Cruz Valentin (victim). Resp. Ex. A at 19. Timmons proceeded to trial, and a jury found him guilty of first degree murder on August 14, 2003. Id. at 78-79. On September 3, 2003, the state trial court sentenced Timmons to life imprisonment with a twenty-five year minimum mandatory term of imprisonment. Id. at 86-91. Timmons appealed, Id. at 97, and on January 28, 2005, the First District Court of Appeal (First DCA) per curiam affirmed Timmons's judgment and sentence without opinion. Resp. Ex. J. The First DCA denied Timmons's motion for rehearing and written opinion, Resp. Ex. L, on March 7, 2005, and issued its mandate on March 23, 2005. Resp. Ex. M; Timmons v. State, 895 So. 3d 1072 (Fla. 1st DCA 2005).

On November 29, 2005, Timmons filed a pro se petition for writ of habeas corpus alleging ineffective assistance of appellate counsel with the First DCA (State Habeas Petition; Resp. Ex. P). The First DCA denied the State Habeas Petition on the merits without opinion on December 30, 2005. Resp. Ex. Q. On December 27, 2005, prior to the ruling on the State Habeas Petition, Timmons filed a pro se motion to allow credit for county jail time pursuant to Rule 3.800(a), Florida Rules of Criminal Procedure. Resp. Ex. N. The state trial court denied the motion on January 10, 2006. Resp. Ex. O.

On March 8, 2006, Timmons, through counsel, filed a motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure (3.850 Motion) raising ten claims of ineffective assistance of counsel. Resp. Ex. T at 1-26. The state trial court held an evidentiary hearing on May 20, 2011, on grounds four, seven, eight, and nine of the 3.850 Motion. Resp. Ex. U. Thereafter, the state trial court denied the 3.850 Motion

on April 11, 2013.  Id.  Timmons appealed, see Resp. Ex. V, and the First DCA per curiam affirmed the state trial court's denial of the 3.850 motion without opinion on March 28, 2014.  Resp. Ex. Y.  The First DCA issued its mandate on April 15, 2014.  Resp. Ex. Z; Timmons v. State, 134 So. 3d 957 (Fla. 1st DCA 2014).

### III. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing.  See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011).  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Timmons's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### IV. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus.  See 28.U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016).  "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against

extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), cert. granted, Wilson v. Sellers, 137 S. Ct. 1203 (2017); Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011); see also Johnson v. Williams, 568 U.S. 289, 301, 133 S. Ct. 1088, 1096 (2013).[2] Thus, the state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Richter, 562 U.S. at 100; Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim, unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable

_____

[2] The presumption is rebuttable and may be overcome "when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100; see also Williams, 568 U.S. at 301-04, 133 S. Ct. at 1096-97. However, "the Richter presumption is a strong one that may be rebutted only in unusual circumstances." Williams, 133 S. Ct. at 1096.

determination of the facts in light of the evidence presented in the state court proceeding."

28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 98. The Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

---

[3] The Eleventh Circuit has previously described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016); <u>see</u> <u>also</u> <u>Landers</u>, 776 F.3d at 1294 n.4; <u>Cave v. Sec'y, Dep't of Corr.</u>, 638 F.3d 739, 744-47 & n.4, 6 (11th Cir. 2011); <u>Jones v. Walker</u>, 540 F.3d at 1277, 1288 n.5.

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016); see also Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1259 (11th Cir. 2016). Notably, the Supreme Court has instructed that "[i]n order for a state court's decision to be an unreasonable application of [that] Court's case law, the ruling must be 'objectively unreasonable, not merely wrong; even clear error will not suffice.'" Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (quoting Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam) (internal quotation marks omitted)). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (regarding § 2254(d)(1)); Landers v. Warden, Att'y Gen. of Ala., 776 F.3d 1288, 1295 (11th Cir. 2015) (regarding § 2254(d)(2)).

Where the state court's adjudication on the merits is "'unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show [ ] there was no reasonable basis for the state court to deny relief.'" Wilson, 834 F.3d at 1235 (quoting Richter, 562 U.S. at 98). Thus, "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." Richter, 562 U.S. at 102; see also Wilson, 834 F.3d at 1235; Marshall, 828 F.3d at 1285. To determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state trial court's previous opinion as one example of a reasonable application of law or determination of fact. Wilson, 834 F.3d at 1239; see also Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017). However, in Wilson,

the en banc Eleventh Circuit stated that the federal habeas court is not limited to assessing the reasoning of the lower court.[4]  834 F.3d at 1239.  As such,

> even when the opinion of a lower state court contains flawed reasoning, [AEDPA] requires that [the federal court] give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt," Renico [v. Lett, 449 U.S. 766, 733 (2010)] (quoting [Woodford v. Visciotti, 537 U.S. 19, 24 (2002)]), and presume that it "follow[ed] the law," [Woods v. Donald,135 U.S. 1372, 1376 (2015)] (quoting Visciotti, 537 U.S. at 24).

Id. at 1238; see also Williams, 133 S. Ct. at 1101 (Scalia, J., concurring).  Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  Titlow, 134 S. Ct. at 16 (2013).  "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'"  Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03).  "If this standard is difficult to meet, that is because it was meant to be."  Richter, 562 U.S. at 102.

### V. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

---

[4] Although the Supreme Court has granted Wilson's petition for certiorari, the "en banc decision in Wilson remains the law of the [Eleventh Circuit] unless and until the Supreme Court overrules it."  Butts, 850 F.3d at 1205 n.2.

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Finally, "the standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at 105. "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional

assistance.'" Daniel, 822 F.3d at 1262 (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

In the Petition, Timmons asserts nine constitutionally ineffective assistance of counsel claims. Timmons exhausted these claims by raising them in his 3.850 motion. See Resp. Ex. T. The state trial court denied Timmons's claims in a lengthy opinion. See Resp. Ex. U. The First DCA affirmed without written opinion. See Resp. Exs. Y, Z.

The Court affords the state court decision the deference it is due under §2254(d). See Butts, 850 F.3d at 1204 (citing Richter, 562 U.S. at 100). Because reviewing the state trial court's decision denying relief leads to the same conclusion under §2254(d) as reviewing the First DCA's affirmance, the Court will review the state trial court's written

explanation for its rejection of Timmons's claim.[5]  See Butts, 850 F.3d at 1204 & 1205, n.2.  Applying the deference the Court owes state courts under AEDPA, the Court asks "whether any fairminded jurist could agree with the state trial court's decision denying [Timmons] habeas relief." Id. at 1205 (citations omitted).  "If some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied."  Id. (quotations and citation omitted).

## A.  Ground One

As Ground One, Timmons contends that his trial counsel was ineffective for failing to object to an improper jury instruction on self-defense.  Timmons asserts that the instruction provided to the jury on aggravated battery was "extremely misleading, improperly shifted the burden of proof, and had the effect of negating Mr. Timmons'[s] sole defense." Petition at 11.

The state trial court denied the claim, stating:

> Defendant argues that counsel was ineffective because he failed to object to the jury instruction on aggravated battery. Defendant claims the instruction improperly shifted the burden to him to establish the victim was attempting to commit aggravated battery and thus Defendant was justified to use deadly force to defend himself.  For support, Defendant cites Montijo v. State, 61 So. 3d 42 (Fla. 5th DCA 2011).  In that case, the court found fundamental error in an instruction that provided: "To prove the crime of Aggravated Battery, two elements *must be proven beyond a reasonable doubt*." Id. at 427.  The Court finds no conflict with Montijo.  In Montijo, the issue was whether the jury instruction improperly shifted the burden to the defendant to prove aggravated battery beyond a reasonable doubt. Id. at 425.  That instruction did not clarify that the state had that burden. Id. at 426.  In the instant case,

[5] Where "it does not matter to the result, and to avoid any further complications if the United States Supreme Court disagrees with [the] Wilson decision," the federal habeas court may apply § 2254(d) by deferring to "the more state-trial-court focused approach." Butts, 850 F.3d at 1204.

> when charging the jury, the Court stated: "To prove the crime of aggravated battery, the *State* must prove the following two elements beyond a reasonable doubt." (Ex. D. at 850-51.) Moreover, the printed jury instruction used identical language. (Ex. E.) Defendant is thus unable to demonstrate that counsel was ineffective for failing to object to this instruction. His grounds for the objection are mistaken. Defendant is not entitled to relief.

Resp. Ex. U at 201. The First DCA affirmed.

After a review of the record and the applicable law, the Court finds that Timmons fails to meet his burden that there was no reasonable basis for the state appellate court to deny relief. The state appellate court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Timmons is not entitled to relief on ground one.

## B. Ground Two

As Ground Two, Timmons contends that trial counsel was ineffective for failing to call Michael Winegar as a witness at trial. Winegar previously lived with Timmons and the victim. Timmons alleges that Winegar's testimony would have corroborated his self-defense claim. Id.

The state trial court held an evidentiary hearing regarding this claim and noted the following exchange between the prosecutor and Timmons in its order denying the claim:

> Q: And you said that Mr. Winegar observed altercations between yourself and [the victim] on previous occasions; is that correct?
>
> A: Yes, sir.
>
> Q: Any fists between the two of you?

A: [The victim] took me outside one time and put me up against the wall, but I don't think [Mr. Winegar] went outside with us. We went outside to, quote, resolve the issue so if we did get into a fight we didn't destroy the property inside the apartment?

Q: Is that a no?

A: [Mr. Winegar] didn't see [the victim] put his hands on me. No, sir.

Resp. Ex. U at 190; 244. Further, the state trial court noted that Timmons's trial counsel testified that "after interviewing Micheal Winegar, he believed the 'witness was not that helpful' because the witness could testify at best only that the victim 'bullied' Defendant." Id. at 191; 268 (citation omitted). Timmons's trial counsel also "testified that [Winegar] told him, 'that he knew of no specific incidents of violence that he either witnessed or heard about where the [victim] had actually done anything violent towards [Timmons]" and "'despite considerable' effort by counsel and his investigator he could not locate Winegar when it came time for trial." Id. The state trial court concluded:

counsel's reasons for not calling Michael Winegear as a witness [not only were] sound trial strategy, but also that counsel's reasons were also valid because the witness was not available for trial. As such, Defendant fail[ed] to demonstrate that counsel's performance was deficient or that counsel's failure to call Winegear prejudiced the outcome of the proceedings.

Resp. Ex. U at 191. The First DCA affirmed.

The Court defers to the state trial court's decision and concludes that it and the state appellate court's affirmance are neither contrary to nor an unreasonable application of Strickland, and they did not rely on an unreasonable determination of the facts in light

of the evidence presented in the state court proceedings. Timmons is not entitled to relief on ground two.

## C. Ground Three

As Ground Three, Timmons contends that trial counsel was ineffective for failing to introduce evidence of his unmedicated bipolar condition and voluntary intoxication in order to rebut the State's evidence regarding his demeanor at the time of the shooting or shortly thereafter. Timmons states that the prosecutor used witnesses' testimony that Timmons appeared "calm and cool" at the time of the shooting or shortly thereafter to demonstrate that Timmons killed the victim with premeditation. Petition at 16. Timmons asserts that Dr. Krop would have rebutted the other witnesses' testimony by testifying that "although Mr. Timmons may have appeared calm, cool, and collected, he may have been in a dissociative state in which his appearance masked the fact that he was in substantial distress." Petition at 16.

The state trial court denied relief stating:

> At the evidentiary hearing, Defendant testified that he suffers from "Manic Depressant Bipolar Disorder." (Ex. F. at 9.) He further testified that he did not take his prescribed medication regularly and that he had not taken his medication for a week before he killed the victim. (Ex. F. at 10-11.) Moreover, Defendant stated that in the hours leading up to the shooting, he drank "about 10 to 12 beers over the course of an hour, hour and a half." (Ex. F. at 11.) Defendant testified that he informed his counsel of these facts. (Ex. F. at 11-12.) On cross-examination, however, Defendant revealed that his drinking was voluntary and that he neglected to take his prescribed medication. (Ex. F. at 16-17.) At the hearing, trial counsel testified that his strategy was to avoid the potential problem that using Defendant's bipolar condition could create:
>
> > I described the potential problem of putting in evidence about his bipolar condition if he wasn't taking his medication as he was suppose[d] to.

The real problem was, there wasn't any evidence that he acted in any way other than what was described. That was the evidence. Mr. Timmons was the one that called the police. Mr. Timmons stayed at the apartment and waited for the police. He complied with all their commands and requests. He was cooperative and told them what happened. To some extent it doesn't really matter whether he did that under the influence of some kind of intoxicant or not or because he was or wasn't taking medication. Those were the facts and -

(Ex. F. at 42-43.) Counsel went on the say that his strategy was based on the theory that Defendant was justified in using deadly force as he acted in self-defense:

When someone acts like Mr. Timmons did; it's clear, at least arguably from a defense point of view; that what he did, he did in his own mind of justification. He thought that he was justified in using the force the way he did because of whatever circumstances surrounded the situation. The fact that he called police, that he waited for them, that he cooperated with them, that he was upfront with them about everything concerning the case certainly showed, at least arguably, that in his own mind that he was acting in self defense. Of course that's not the ultimate legal issue that has to be resolved by the jury, but I think it is important evidence for them to consider.

. . . .

We mounted a self defense defense. That was what we put forward, and we tried to demonstrate that the circumstances were such surrounding Mr. Timmons and his own appreciation of them that the constant bullying and threats that he had endured caused him to think that his only way of being able to save himself in the situation was to use deadly force. And that was what our defense was.

(Ex. F. at 43-44.)

> The Court finds that counsel's argument that it was his strategy not to present evidence of Defendant's involuntary intoxication and unmedicated bipolar condition was credible and that this strategy was reasonable.

Resp. Ex. U at 198-199. The First DCA affirmed.

The Court defers to the state trial court's decision and concludes that it and the state appellate court's affirmance were neither contrary to nor an unreasonable application of Strickland, and they did not rely on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Timmons is not entitled to relief on ground three.

## D. Ground Four

As Ground Four, Timmons contends that trial counsel was ineffective for failing to introduce evidence of his unmedicated bipolar condition and voluntary intoxication in order to support his claim of self defense. Timmons asserts that the evidence, specifically Dr. Krop's testimony, would have established that "he had an enhanced sense of danger that he was facing from [the victim] at the time of the shooting." Petition at 17.

In denying this claim, the state trial court considered Dr. Krop's testimony at the evidentiary hearing and determined it could have supported only a voluntary intoxication defense. Then the state trial court recognized that the Florida state Legislature had "all but eliminated the defense of voluntary intoxication." Resp. Ex. U at 200. Further, the state trial court found Timmons's trial counsel's testimony during the evidentiary hearing "credible and that his trial strategy was reasonable in light of the circumstances of this case." Id. at 201. The First DCA affirmed.

After a review of the record and the applicable law, the Court finds that the state court's adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Timmons is not entitled to relief on ground four.

### E. Ground Five

As Ground Five, Timmons contends that trial counsel was ineffective for failing to object to improper cross-examination of him by the prosecutor regarding why he did not leave the apartment rather than remain at the apartment to shoot the victim. Timmons argues that the prosecutor's questions were improper because they were contrary to the law regarding the duty to retreat in one's own home when attacked by a co-occupant. He believes the questions "indicated to the jury that he was required to retreat from his home." Petition at 20. Specifically, the prosecutor questioned Timmons at trial as follows:

> Q: His back was turned to you, and you could have walked – how many feet is it from the back of his chair out the front door?
>
> A: About ten feet.
>
> Q: So you could have continued to walk out that front door and he never would have even known?
>
> A: He would have seen me walk past him, yes, ma'am.
>
> Q: And you would have gotten away safe?
>
> MR. BUZZELL: Objection, that calls for a conclusion.
>
> THE COURT: Sustained.
>
> Q: Do you think that you would have gotten away safe?

A: I have no idea if he had a weapon on him at that time or not.

. . .

Q: Did you do everything reasonable within your own means consistent with your safety to put out any danger that you thought that you were in?

A: I would say reason had nothing to do with it, I didn't have time for reason.

Q: Why didn't you just stay in your bedroom?

A: On second thought, I probably should have.

Q: Why didn't you just walk out the door?

A: I was going to bed.

Q: No, when you walked down the hall with the shotgun, why didn't you just creep on right outside the door?

A: The thought never crossed my mind.

Resp. Ex. F at 815-16, 820.

The state trial court denied this claim, stating:

The privilege of non-retreat is granted only to the extent that one may "meet force with force," and only if "necessary to prevent death or great bodily harm to himself." <u>Weiand</u>, 732 So. 2d at 1057.[6] Notably, the justifiable use of deadly force instruction requires the jury to judge the defendant "by circumstances by which he was surrounded at the time the force was used." Fla. Std. Jury Instr. (Crim.) 3.04(d) (2002). The State's questions were, therefore, relevant to illustrate the circumstances surrounding Defendant at the time he shot the victim. They were relevant to establish whether Defendant acted reasonably under those circumstances, whether Defendant was meeting force with force, and whether his actions were necessary to prevent imminent death or harm to himself. Thus, the State's questions regarding why Defendant did not choose to leave the home were proper.

---

[6] <u>Weiand v. State</u>, 732 So. 2d 1044 (Fla. 1999).

Moreover, in closing, counsel articulated the correct standard to the jury:

> [Y]ou have to judge the person by the circumstances by which he was surrounded at the time the force was used. "The danger facing him need not be actual." In other words, in this case the danger would have been actual if, for example, [the victim] had a gun and it was prominently displayed. "However, if appearance of danger was so real that a reasonably cautious person would believe the danger could be avoided only through the use of force, then under those appearances and circumstances a person may be justified in using deadly force."
>
> I suggest to you that's exactly the situation we have here.
>
> The accused is not required to flee his or her own home, even if it's a co-occupant who is threatening. They have the lawful right to stand their ground and meet force with force, even to the extent, if necessary, to . . . use force likely to cause death or great bodily harm, if it was necessary to prevent that from happening to them.

(Ex. D. at 871-872.)

> Counsel was not ineffective for failing to object to the State's proper questions about Defendant's duty to retreat. Any objection would have been futile because the questions were proper. Defendant fails to demonstrate that counsel's performance was outside the parameters of reasonably effective assistance. He also fails to demonstrate how counsel's alleged omission prejudiced the outcome of the proceedings. Defendant is not entitled to relief.

Resp. Ex. U at 184-85. The First DCA affirmed.

The Court defers to the state trial court's decision and concludes that it and the state appellate court's affirmance were neither contrary to nor an unreasonable

application of <u>Strickland</u>, and they did not rely on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Timmons is not entitled to relief on ground five.

### F. Ground Six

As Ground Six, Timmons contends that trial counsel was ineffective for failing to object to the prosecutor's improper closing statements regarding Timmons's duty to retreat before using force against the victim. Specifically, the prosecutor stated:

> He could have walked right out that door. I believe the testimony is there is about nine feet from the end of the couch to the door. No one was watching what he was doing. Even he said that. No one was watching what he was doing. He could have walked right out that front door. And I submit to you if someone is so afraid that they are going to get their ass kicked or that they are going to get killed, their immediate response would be to save their own life, and they wouldn't linger as they tried to steady a long shotgun in a small hallway to get just the right shot.
>
> . . . .
>
> There was no force at all put upon defendant. None whatsoever. The defendant cannot use – justify the use of deadly force likely to cause death or great bodily harm unless he used every reasonable means within his power and consistent with his own safety to avoid the danger before resorting to that force. He could have walked right out that front door. If you believe that [the victim] was getting ready to kill him, he still could have walked out that door. He didn't use every reasonable means to protect his own safety before he took the life of another person.

Resp. Ex. F at 899-900, 903.

The state trial court denied relief on the claim finding that "the state [did] not cause confusion regarding the duty to retreat by arguing generally that the defendant had not acted reasonably under the circumstances." Resp. Ex. U at 186. It summarized the

testimony of three witnesses and that of Timmons regarding the circumstances surrounding the shooting of the victim. Based on the evidence, the state trial court concluded that

> The State's comments during closing arguments were proper comments on the eyewitnesses' and Defendant's trial testimony. The State made reasonable inferences by arguing that Defendant could have left the apartment before shooting the victim and that Defendant was not justified in using deadly force when he shot the victim. Defense counsel was not ineffective for failing to object to the State's proper arguments.

Resp. Ex. U. at 189. The First DCA affirmed.

The Court defers to the state trial court's decision, and concludes that it and the state appellate court's affirmance were neither contrary to nor an unreasonable application of Strickland, and they did not rely on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Timmons is not entitled to relief on ground six.

## G. Ground Seven

As Ground Seven, Timmons contends that trial counsel was ineffective for failing to object to an improper definition of premeditation during closing arguments. Timmons asserts that the prosecutor "improperly indicated that time alone was sufficient to establish premeditation and reflection." Petition at 22. With regard to premeditation, the prosecutor made the following statements:

> The jury instruction tells us that killing with premeditation is killing after consciously deciding to do so. You heard Mr. Timmons. He said he walked down the hall - - and I asked him on cross-examination, "Did you intend to kill him?" And he said that yes, he did, that he aimed that gun, aimed it to the kill zone and intended to kill him and knew that it was going to kill him. He knew what a 12 gauge shotgun was going to do, and he knew that if he shot him right there it was going to kill him.

And I asked him, "Did you have time to think about that?" And he said, "Yes."

The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. Let's talk about that a little bit. The defense attorney just got up here and said that Mr. Dovi had his timing wrong, that it couldn't possibly be ten minutes. That because he was high on heroin, he's wrong and the defendant and what his statement says is right.

And I submit to you that even if you believe what the defendant told you, it's still sufficient time for first degree premeditated murder. All it takes is the time to form the intent and the reflection to decide to go through with what it is that you intended to do.

. . . .

The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.

. . . .

The defendant admitted that he walked down the hall, took off the – walked down the hall, saw [the victim], took off the shotgun before he placed it to his shoulder, then he aimed where he was going to shoot, and then he blasted him away. Ladies and gentlemen, that time alone is sufficient to prove premeditation and a reflection. He knew what he was going to do. He wanted to do it.

Resp. Ex. F. at 894-897, 907.

After citing the standard jury instruction for premeditation, the state trial court noted that "[a] prosecutor's comments on premeditation, which are largely identical to the standard jury instruction on premeditation, are not objectionable." Resp. Ex. U at 191-192. It also noted that there was some discrepancy between the testimony of the witnesses regarding the time that elapsed between the disagreement between Timmons

and the victim and when Timmons returned to the living room to shoot the victim. Id. at 192-93. Nevertheless, the state trial court concluded:

> The consensus among the eyewitnesses was that Defendant was gone from the living room more than long enough to consciously and with reflection decide to shoot the victim. Defendant's testimony also demonstrated enough time to allow the State to argue – according to the jury instruction – that Defendant's decision to kill the victim was a conscious one accompanied by sufficient reflection as to the nature of the intended act and its consequences.
>
> The State properly based its closing argument on the law of premeditation and there was sufficient evidence to support that argument. Defendant is unable to demonstrate that the Court would sustain an objection by his counsel in light of the facts and the purpose of a closing argument. Counsel was not deficient for failing to object and this omission did not change the outcome of the trial.

Resp. Ex. U at 194. The First DCA affirmed.

The Court defers to the state trial court's decision and concludes that it and the state appellate court's affirmance were neither contrary to nor an unreasonable application of Strickland, and they did not rely on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Timmons is not entitled to relief on ground seven.

## H.  Ground Eight

As Ground Eight, Timmons contends that trial counsel was ineffective for failing to object and move for a mistrial when the prosecutor, during his closing argument, incorporated William Mitts's testimony that the state trial court had previously instructed the jury to disregard. The state trial court denied the claim stating:

> William Mitts testified that he had a conversation with Defendant while they were both incarcerated in the Duval County Pre-Trial detention Facility. (Ex. D. at 657-58, 664.)

He testified that during this conversation the Defendant admitted to shooting the victim. (Ex. D. at 664-71.) Thereafter, the following exchange occurred between the State and Mitts:

> Q: So when he told you that he shot his roommate, what is it that you said?
>
> . . . .
>
> A: "I still don't believe you," is what I said to him.
>
> Q: And what did he say in response to you?
>
> A: Again, he talked about, "It's a matter of self-respect, he crossed the line," and that he had in fact done it.
>
> Q: And what was his demeanor when he was telling you that?
>
> A: My interpretation of his demeanor is a job well done, a load lifted.

(Ex. D. at 670-71.) Defense counsel objected to this last statement as nonresponsive and an inappropriate testimony regarding the witness's interpretations. (Ex. D. at 671-72.) The Court sustained the objection and instructed the jury to disregard the last response. (Ex. D. at 673.) Thereafter the State clarified the question for the witness:

> Q: Now Mr. Mitts, when I ask you this question, I don't want you to tell me what your interpretation of what he was saying meant to you, I just want you to tell me what he – how he said it to you. Okay? When he said this to you, how did he say it to you, without your interpretation of it?
>
> A: In a calm, collected manner.

(Ex. D. at 673-674.)

The portion of the State's closing argument that Defendant finds objectionable and alleges incorporates the stricken

statement by Mitts begins immediately after the State read the definition of premeditation to the jury:

> The defendant was calm, cool, and collected. He called 911 like he was ordering pizza. "Yeah, this is 717 Mallard Cove. I shot and killed someone. Raul Valentin. Shot him with a shotgun." Very satisfied with himself. Job done. He had taken care of business.

(Ex. D. at[ ] 898-99.)

Florida law recognizes that "in closing argument, counsel is permitted to review the evidence and fairly discuss and comment upon properly admitted testimony and logical inferences from that evidence." Conahan v. State, 844 So. 2d 629, 640 (Fla. 2003) (citing Mann v. State, 603 So. 2d 1141, 1143 (Fla. 1992)). Courts gives both parties wide latitude during closing arguments. Rivera v. State, 840 So. 2d 284, 286-87 (Fla. 5th DCA 2003). Furthermore, a comment made during closing argument may be inappropriate when viewed alone, but when considered within the context of the entire closing argument and the record, it may be a fair argument. Id.

During the trial, the State questioned Officer Thomas, one of the officers at the scene, about Defendant's demeanor at the time of the arrest:

> Q: What was his demeanor or attitude when he made those statements to you?
>
> A: With us he was cooperative.
>
> Q: Did he appear calm in any way?
>
> A: Yes, sir, he appeared to be calm at that point.

(Ex. D. at 584.) The jury also heard testimony from Stephen Dovi regarding Defendant's actions after the shooting:

> A: He said, "Don't touch him." And I said, "Well I have to help him, we have to help him somehow." And he said, "I'm going to call the police." And he went to the phone, sat down on

the floor Indian style, picked up the phone and dialed 911.

> Q: Did you hear any of the conversation that he had with the police?

> A: Yes, ma'am.

> Q: What did you hear?

> A: "This is Christopher Timmons. I just killed my roommate with a shotgun. Apartment 228. White T-shirt." It was only his side of the conversation, obviously, and I just left.

(Ex. D. at 406-07.) Finally Angela Bascom testified that when the officers led Defendant out of the apartment after the shooting, Defendant "had a smug look on his face" and was smiling at her. (Ex. D. at 484.)

Defendant claims the State improperly reiterated William Mitts's improper comments to the jury regarding that witness's interpretation of Defendant's demeanor at the time the witness discussed the shooting with Defendant while both were incarcerated at the jail, not immediately after the shooting. Counsel's failure to object to the State's comments was not unreasonable. Defendant's claim takes the State's argument out of context. The State did not refer to Mitts during the closing argument. Rather, the State was describing Defendant's demeanor immediately after the shooting to support its argument that the murder was premeditated. Without William Mitts's stricken statement, the State still had sufficient evidence to support its closing argument.

Defendant is unable to demonstrate counsel's omission fell below reasonable standards. What's more, Defendant fails to demonstrate that there was a reasonable probability that the outcome of the proceeding would have been more favorable but for counsel's omission.

Resp. Ex. U at 194-97. The First DCA affirmed.

The Court defers to the state trial court's decision and concludes that it and the

state appellate court's affirmance were neither contrary to nor an unreasonable

application of <u>Strickland</u>, and they did not rely on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Timmons is not entitled to relief on ground eight.

## I. Ground Nine

As Ground Nine, Timmons contends that "[e]ven if the Court concludes that none of the aforementioned claims warrant federal habeas relief, on their own, it should concluded (sic) that the cumulative effect of trial counsel's deficient conduct deprived Mr. Timmons of his right to a fair trial." Petition at 24.

"The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." <u>United States v. Baker</u>, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." <u>Morris v. Sec'y, Dep't of Corr.</u>, 677 F.3d 1117, 1132 (11th Cir. 2012).

Because the Court has determined that none of Timmons's individual claims of error or prejudice have merit, Timmons's cumulative error claim cannot stand. <u>See</u> <u>United States v. Taylor</u>, 417 F.3d 1176, 1182 (11th Cir. 2005) ("[There being no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). Thus, Timmons is not entitled to relief on ground nine.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Timmons seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Wright "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller–El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED,** and this action is **DISMISSED WITH PREJUDICE**.

2. The **Clerk of the Court** is directed to enter judgment denying the Petition and dismissing this case with prejudice.

3. If Timmons appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The **Clerk of the Court** is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of September, 2017.

MARCIA MORALES HOWARD
United States District Judge

sflc

c:     Counsel of Record